[Cite as *State v. Brewer*, 2012-Ohio-3899.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
WYANDOT COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,          CASE NO.  16-11-13

     v.

WILLIAM JOSEPH BREWER, JR.,      O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Wyandot County Common Pleas Court
Trial Court No. 11-CR-0035

Judgment Affirmed

Date of Decision:   August 27, 2012

APPEARANCES:

    *Howard A. Elliott*  for Appellant

    *Jonathan K. Miller*  for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, William Joseph Brewer, Jr., appeals the Wyandot County Court of Common Pleas' judgment entry of conviction and sentence. For the reasons that follow, we affirm.

{¶2} On June 15, 2011, the Wyandot County Grand Jury indicted Brewer on Count One of breaking and entering in violation of R.C. 2911.13(A), a fifth degree felony; Count Two of theft in violation of R.C. 2913.02(A)(1), a fifth degree felony; and Count Three of possessing criminal tools in violation of R.C. 2923.24(A), a fifth degree felony. (Doc. No. 1).

{¶3} On June, 16, 2011, Brewer entered pleas of not guilty at arraignment. (Doc. No. 7).  On June 21, 2011, Brewer filed a written plea of not guilty.  (Doc. No. 8).

{¶4} A jury trial was scheduled for July 28, 2011; however, on July 5, 2011, Brewer, through counsel, filed a motion for a continuance and explicitly waived his speedy trial rights. (Doc. Nos. 11-12).  The trial court granted the motion and continued the trial to October 18-19, 2011.  (Doc. No. 13).

{¶5} On August 23, 2011, Brewer, pro se, filed a motion to dismiss the indictment for an alleged violation of his speedy trial rights. (Doc. No. 27). Brewer alleged that he gave his attorney consent to continue the trial but only until August 19, 2011, prior to the expiration of his speedy trial time. (*Id.*).

{¶6} On August 31, 2011, the trial court held a hearing on Brewer's motion to dismiss. (Doc. No. 31). During the hearing, the trial court granted Brewer's attorney permission to withdraw as counsel, and, thereafter, denied the motion to dismiss based upon counsel's previously filed motion for continuance. (*Id.*).

{¶7} On September 21, 2011, the trial court appointed Brewer another attorney after Brewer failed to retain private counsel. (Doc. No. 37). On that same day, the newly-appointed attorney filed a motion for a continuance of the trial. (Doc. No. 39). The trial court granted the motion the next day and rescheduled trial for October 19-20, 2011. (Doc. No. 40).

{¶8} On October 12, 2011, Brewer filed a motion to withdraw appointed counsel citing a complete breakdown in the attorney-client relationship. (Doc. No. 73). The trial court held a hearing and denied the motion that same day, but the trial court granted a continuance for Brewer to prepare for trial with his attorney. (Doc. No. 77).

{¶9} On November 7, 2011, the trial court granted the State's motion to amend Count Two of the indictment to replace "$500.00" with "$1,000.00" and replace "$5,000.00" with "$7,500.00" for purposes of the value of the items stolen. (Doc. No. 99).

{¶10} The matter proceeded to jury trial on November 9-10, 2011. The jury found Brewer guilty on all three counts. (Doc. Nos. 101-103). On November 15, 2011, the trial court entered a judgment entry of conviction. (Doc. No. 107).

{¶11} On November 16, 2011, the trial court sentenced Brewer to 11 months on each count. (Doc. No. 108). Since Brewer was on post-release control when he committed the offenses, the trial court terminated Brewer's post-release control and imposed a 12-month sentence for his violation of post-release control. (*Id*.). The trial court ordered that the terms imposed on Counts One, Two, and Three, as well as the term imposed for the violation of Brewer's post-release control, be served consecutively for an aggregate sentence of 45 months. (*Id*.).

{¶12} On November 23, 2011, Brewer filed a notice of appeal. (Doc. No. 112). Brewer now appeals raising five assignments of error for our review. We will combine Brewer's first and fifth assignments of error for discussion.

### Assignment of Error No. 1

**The appellant was denied effective assistance of counsel by virtue of the failure of trial counsel to review key components of evidence with the appellant in advance of trial such that the confidence of the outcome and the ability of the appellant to make an informed decision was undermined and eviscerated.**

### Assignment of Error No. 5

**The appellant's speedy trial rights derived under Ohio Revised Code §2945.71 were violated when counsel for the appellant inadvertently and contrary to the appellant's express authority,**

**filed with the Court a waiver of speedy trial rights and as such provided ineffective assistance of counsel to the appellant.**

{¶13} In his first assignment of error, Brewer argues that he was denied effective assistance of trial counsel because trial counsel failed to show him the surveillance video of the crime scene. Specifically, Brewer argues that, had he seen the surveillance video which showed his vehicle at the crime scene, he may have taken a plea deal. In his fifth assignment of error, Brewer argues that his first appointed trial counsel was ineffective for filing the July 5, 2011 continuance motion thereby waiving his speedy trial rights.

{¶14} A defendant asserting a claim of ineffective assistance of counsel must establish that counsel's performance was deficient or unreasonable under the circumstances, and counsel's deficient performance prejudiced him. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), citing *Strickland* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

{¶15} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies

prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *Bradley* at 141-142, citing *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

{¶16} The State first provided Brewer with discovery on June 28, 2011 and supplemental discovery on July 19, 2011. (Doc. Nos. 10, 14). During the August 31, 2011 hearing prior to trial, Brewer's first attorney, Shane M. Leuthold, indicated that he had spent 2½ hours going over discovery items with Brewer, including DVDs. (Aug, 31, 2011 Tr. at 6-7). Brewer did not contradict this statement at the hearing. (*Id.*). During the October 11, 2011 motion hearing, after Leuthold withdrew from the case, the State represented to the trial court that it "took great pains to make arrangements with Mr. Leuthold at the jail and Mr. Brewer to show the surveillance video from the store." (Oct. 11, 2011 Tr. at 5-7). Brewer's newly appointed counsel, Randy Hoffman, confirmed that the State had previously supplied Leuthold a copy of the surveillance video. (*Id.* at 6). At the October 24, 2011 hearing, Hoffman represented to the trial court that he met with

Brewer for "a little over two hours," and that counsel "watched the video a couple times." (Oct. 24, 2011 Tr. at 8). At sentencing, Hoffman indicated that "[i]t was his understanding that a flash drive was brought from the prosecutor's office to have [Brewer] see it." (Nov. 16, 2011 Tr. at 7). Brewer admitted that "the prosecutor sent an assistant over there with a copy of the flash drive and set us up with a computer from the prosecutor's office"; though, Brewer alleged that the video he saw was not the same video that was played during the trial. (*Id*. at 8-9).

{¶17} Based upon the foregoing, we conclude that the record demonstrates that Brewer *was* provided an opportunity to watch the surveillance video prior to trial contrary to his bald assertions otherwise. Therefore, the record fails to demonstrate that counsel was deficient for failing to show him the evidence against him prior to trial. Furthermore, Brewer has failed to demonstrate prejudice in this case beyond merely speculating that he might have entered into a plea agreement.

{¶18} Brewer's argument that trial counsel was ineffective for seeking a continuance of the trial also lacks merit. The record indicates that Leuthold requested to continue Brewer's trial because Leuthold had three previously scheduled jury trials for the same day. (Doc. No. 12); (Feb. 2, 2012 Tr. at 4). Consequently, the continuance request was necessary if Leuthold was to continue his representation of Brewer. Aside from that, whether to request a continuance,

and thereby waiving a defendant's speedy trial time, is a matter of trial strategy and not ineffective assistance, even when the continuance is filed without the defendant's consent. *State v. Mitchell*, 10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 53, citing *State v. Hill*, 10th Dist. No. 09AP-398, 2010-Ohio-1687, ¶ 13. Brewer has failed to demonstrate how he was prejudiced by the continuance and the waiver of his speedy trial rights as well.

{¶19} Brewer's first and fifth assignments of error are, therefore, overruled.

**Assignment of Error No. 2**

**The evidence of the property taken as a result of the theft offense was not presented with sufficient clarity and precision in order for the trier of fact to ascertain beyond a reasonable doubt a sufficient quantity and value of property to establish the threshold of a felony offense, that of an amount over $1,000.00, in that taxes were included in the value of the property and no adjustment was made to separate out that issue from the value of the goods in question.**

{¶20} In his second assignment of error, Brewer argues that the State failed to submit evidence demonstrating that the value of the stolen cigarettes was over $1,000. Additionally, Brewer argues that the testimony concerning the value of the stolen cigarettes inappropriately included taxes contrary to the rule in *State v. Adams*, 39 Ohio St.3d 186 (1988), syllabus.

{¶21} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

{¶22} Brewer was convicted of theft in violation of R.C. 2913.02(A)(1), which provides, in pertinent part, "[n]o person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent * * *." If the value of the property stolen is $1,000 or more but less than $7,500 hundred, the theft offense is a fifth degree felony. R.C. 2913.02(B)(2).

{¶23} At trial, the store owner, Unmesh Brahmbhatt, and the store manager, Terri Born, both testified that, based upon the inventory records before and after the crime, 137 cartons of cigarettes were stolen. (Nov. 9-10, 2011 Tr. at 162, 298). Born further testified that she watched the surveillance video and discovered that the suspect used an empty trash can to load and carry cartons of cigarettes from the store. (*Id*. at 156, 161). Born testified that she attempted to duplicate the manner in which the suspect stole the cigarettes and determined that "over fifty cartons" could be loosely loaded into a trash can. (*Id*. at 156). Brahmbhatt brought a trash can from the convenience store with 50 cartons of cigarettes to the trial court for the jury to observe. (*Id*. at 298-301). The trash can was less than half-full, according to Brahmbhatt. (*Id*. at 301). Born provided a list of the different brands of cigarettes stolen and their price per carton, which was

admitted into evidence at trial. (*Id*. at 157); (State's Ex. 16). Virginia Slims, the most expensive carton of cigarettes, were $53.83/carton; Pyramid, the least expensive carton of cigarettes, were $34.35/carton. (Nov. 9-10, 2011 Tr. at 158); (State's Ex. 16).

**{¶24}** Construing this evidence in a light most favorable to the State, the record contains evidence from which a rational trier of fact could conclude that the value of the property Brewer stole exceeded $1,000. The value of 137 cartons of Virginia Slims, the most expensive cigarettes, is $7,374.71. Even taking the evidence in a light most favorable to Brewer, the value of 50 cartons of Pyramid cigarettes, the least amount of the cheapest brand of cigarettes, is $1,717.50—well over the $1,000 felony threshold.

**{¶25}** Brewer next argues that the price of the cigarettes inappropriately included taxes contrary to the rule in *State v. Adams*, 39 Ohio St.3d 186. The Ohio Supreme Court in *Adams* held that "Ohio *sales tax* shall not be included in the determination under R.C. 2913.61(D)(2) of the replacement cost of stolen personal effects and household goods." 39 Ohio St.3d 186, syllabus (emphasis added). The Court concluded that Ohio sales tax should not be included for purposes of computing the value of stolen property, because Ohio sales tax is subject to multiple exemptions, i.e., churches, non-profits, the State, and its political subdivisions, and thus, not automatically added to every sale of personal goods. *Id*.

at 187. The Court reasoned that it was conceivable that a defendant who stole an item from a person/entity subject to Ohio sales tax could be convicted of a felony; whereas, a defendant who stole the same item from a tax-exempt person/entity could only be convicted of a misdemeanor. *Id.* at 188. The Court concluded that such an unequal application of R.C. 2913.51 violates the "uniform operation" requirement of Section 26, Article II of the Ohio Constitution. *Id.* at 187-188.

{¶26} *Adams* has no application here. Brewer is not alleging that Ohio sales tax was included for purposes of calculating the value of the cigarettes he stole. Rather, Brewer is alleging that the value of the cartons of cigarettes should not have included the excise tax levied under R.C. 5743.02. The excise tax levied under R.C. 5743.02 is not subject to multiple exemptions like Ohio sales tax and is not subject to the same "uniform operation" violation identified in *Adams*.

{¶27} Brewer's second assignment of error is, therefore, overruled.

### Assignment of Error No. 3

**Whether the evidence and facts surrounding the Appellant's prior conviction admitted under Evidence Rule 404(B) to show the identity of the Appellant did not have sufficient unique details which could be matched to the offense charged in order to establish the Appellant's identity in the offense charged and improperly served to attack the Appellants [sic] character.**

{¶28} In his third assignment of error, Brewer argues that the trial court abused its discretion by allowing evidence at trial of his prior breaking and entering conviction under Evid.R. 404(B) to establish his identity.

{¶29} "'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 74, quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157.

{¶30} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). However, it may be admissible for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id*.

{¶31} "'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.'" *State v. Lowe*, 69 Ohio St.3d 527, 531 (1994), quoting *State v. Smith*, 49 Ohio St.3d 137, 141 (1990). While it is unnecessary that the other acts be the same or similar crime as the defendant is presently charged, the "the other-acts evidence must be related to and share common features with the crime in question" demonstrating a modus operandi, or "behavior fingerprint," identifiable

with the defendant. *Lowe*, 69 Ohio St.3d at 531, citing *State v. Jamison*, 49 Ohio St.3d 182 (1990), syllabus; *State v. Hutton*, 53 Ohio St.3d 36, 40 (1990).

**{¶32}** In the present case, Brewer was convicted for breaking and entering the convenience store at a Shell gas station by smashing the front glass door of the store around 2:42 a.m. on May 16, 2011. (Nov. 9-10, 2011 Tr. at 111, 172). Brewer used an empty trash can from the gas station to load and carry 137 cartons of cigarettes from the store to the trunk of his vehicle. (*Id*. at 156, 161-162, 173, 192, 298). During the commission of the offense, Brewer covered his face with a mask and used gloves to cover his hands. (*Id*. at 116, 119, 161, 173, 190-195). Carey Police Officer Collins pursued Brewer as he was leaving the crime scene, but, after Brewer drove out of Collin's line of sight, Brewer drove his vehicle off the road 300 yards into a muddy field. (*Id*. at 111-112, 126, 129, 197). Brewer's vehicle was later found abandoned in the field, only about six-tenths of a mile from the convenience store. (*Id*. at 107, 126, 146, 168, 204). Law enforcement did not find any cartons of cigarettes in Brewer's vehicle but did find a piece of glass similar to the broken glass found at the crime scene. (*Id*. at 126-127, 201, 207).

**{¶33}** During the trial, Findlay Police Officer Shawn Nungester testified that, in February 2008, Brewer was apprehended after breaking and entering into a gas station convenience store around 4:00 a.m. (*Id*. at 215-220). Nungester testified that, during the commission of the February 2008 offense, Brewer wore a

mask and gloves; Brewer gained entrance to the store by breaking the glass front door of the store; and, Brewer carried and loaded cartons of cigarettes from the store into the trunk of his car using a trash can. (*Id.*). Brewer was apprehended when he drove his vehicle into a muddy field and became stuck while trying to evade law enforcement's pursuit. (*Id.* at 217).

{¶34} Based upon the foregoing, we cannot conclude that the trial court abused its discretion by allowing Officer Nungester's testimony concerning Brewer's 2008 breaking and entering conviction. To commit both offenses, Brewer broke a glass door to gain entrance to a gas station convenience store where he used a trash can he found on the scene to load and carry cartons of cigarettes to his vehicle. Brewer also drove his vehicle into a field to escape law enforcement and abandoned his vehicle while attempting to evade the police in both cases. Consequently, Officer's Nungester's testimony was offered to demonstrate a "unique, identifiable plan of criminal activity" to establish Brewer's identity under Evid.R. 404(B); and therefore, the trial court did not abuse its discretion by admitting the other acts testimony. *Jamison*, syllabus.

{¶35} Brewer's third assignment of error is, therefore, overruled.

### Assignment of Error No. 4

**Whether the conviction of the Appellant, for companion charges of breaking and entering, theft, and criminal tools given the fact that they arose out of a single transaction and**

**with a single animus must have been merged as allied offenses of similar import for purposes of sentencing.**

**{¶36}** In his fourth assignment of error, Brewer argues that the trial court erred by failing to merge all of his offenses under R.C. 2941.25 and *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.

**{¶37}** Whether offenses are allied offenses of similar import presents a question of law we review de novo. *State v. Stall*, 3d Dist. No. 3-10-12, 2011-Ohio-5733, ¶ 15. R.C. 2941.25, Ohio's multiple-count statute, provides in relevant part:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, * * * and the defendant may be convicted of all of them.

**{¶38}** Whether offenses are allied offenses under R.C. 2941.25 is a two-part inquiry. *Johnson*, 2010-Ohio-6314, at ¶ 47-51. First, the court must determine "whether it is possible to commit one offense and commit the other with

the same conduct, not whether it is possible to commit the one without committing the other." *Id.* at ¶ 48, citing *State v. Blankenship*, 38 Ohio St.3d 116, 119 (1988). This first inquiry does not require the court to engage in hypothetical or abstract comparison of the offenses at issue. *Id.* at ¶ 47. Rather, "[i]f the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id.* at ¶ 48.

{¶39} If the court answers the first inquiry in the affirmative; then second, the court must determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., dissenting).

{¶40} If the court answers both the first and second questions affirmatively, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50.

{¶41} However, "if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense," then the offenses will not merge. *Id.* at ¶ 51, citing R.C. 2941.25(B).

{¶42} As used in R.C. 2941.25(B), "animus" means "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).

{¶43} Brewer was convicted of breaking and entering under R.C. 2911.13(A); theft under R.C. 2913.02(A)(1); and possessing criminal tools under R.C. 2923.24(A). To be convicted of breaking and entering, the State was required to prove that Brewer, "by force, stealth, or deception," trespassed in an unoccupied structure "with purpose to commit therein any theft offense * * * or any felony." R.C. 2911.13(A). To be convicted of theft, the State was required to prove that Brewer, "with purpose to deprive the owner of property," "knowingly obtain[ed] or exert[ed] control" over the property "[w]ithout the consent of the owner or person authorized to give consent." R.C. 2913.02(A)(1). To be convicted of possession of criminal tools, the State had to prove that Brewer possessed or had under his control "any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A).

{¶44} Count Three of the indictment alleged that Brewer possessed the following criminal tools: a mask, gloves, and "glass-breaking tool." (Doc. No. 1). The record contains no bill of particulars. During closing argument, however, the State argued that Brewer "wore a mask and gloves to conceal his identity, to prevent any fingerprints being left behind or DNA." (Nov. 9-10, 2011 Tr. at 366). The State further argued that Brewer's criminal purpose for possessing the mask

and gloves was to "facilitate the crime of breaking and entering to help conceal his identity." (*Id*. at 370). The State also stated that part of Brewer's modus operandi was to use a mask and gloves to conceal his identity. (*Id*. at 374).

### *Theft and Breaking & Entering*

{¶45} Examining the elements of theft in violation of R.C. 2913.02(A)(1) and breaking and entering in violation of R.C. 2911.13(A), we agree with the Court of Appeals for the Twelfth District that these offenses cannot be committed with the same conduct, and therefore, are not allied offenses under R.C. 2941.25(A). *State v. Ayers*, 12th Dist. Nos. CA2010-12-119, CA2010-12-120, 2011-Ohio-4719, ¶ 34, citing *Johnson*, 2010-Ohio-6314, at ¶ 51. While it may have been necessary for Brewer to break into the convenience store to steal the cartons of cigarettes, the *conduct* required to commit one of the offenses will never result in the commission of the other; and therefore, the trial court did not err by failing to merge these offenses. *Id*.

### *Theft and Possession of Criminal Tools*

{¶46} It is possible to commit a theft and possess criminal tools with the same conduct. *Johnson*, 2010-Ohio-6314, at ¶ 48. For example, when a defendant uses a drill, pipe cutter, wire cutter, and a wrench to disassemble, detach, and steal an air conditioning unit from a building, he has committed a theft offense while, at the same time, possessing criminal tools. *State v. Simmonds*, 12th Dist. No.

CA2011-05-038, 2012-Ohio-1479. To reach this conclusion, the Court in *Simmonds* noted that it was undisputed that the defendant used the tools during the commission of the theft, and, after reviewing the bill of particulars and the State's closing arguments, it was clear that the State prosecuted the defendant for the possession of criminal tools based upon his conduct in engaging in the theft. *Id*. at ¶ 19-23. Consequently, the Court determined that the defendant acted with the same animus possessing the criminal tools as the theft offense, i.e. to steal the air conditioning unit from the building; and therefore, the offenses were allied offenses. *Id*. at ¶ 23.

{¶47} Next, we must determine whether Brewer possessed the criminal tools with a separate purpose or motive (animus) from the theft offense. *Johnson*, 2010-Ohio-6314, at ¶ 51, citing R.C. 2941.25(B); *Logan*, 60 Ohio St.2d at 131 ("animus" means "purpose or, more properly, immediate motive."). *Simmonds* is instructive on that question. The defendant in *Simmonds* used the criminal tools to disassemble and detach the air conditioning unit from the building so he could exert control over the air conditioning unit to deprive the church of its property, i.e. to commit the theft offense. During closing arguments, the State argued Brewer's immediate motive or purpose for using the mask and gloves, however, was to conceal his identity and prevent his subsequent apprehension. (Nov. 9-10, 2011 Tr. at 366, 370, 374). Concealing one's identity and preventing one's

subsequent apprehension are distinct and separate purposes or motives (animus) from committing the theft offense, itself. *See State v. Johnson*, 1st Dist. No. C-970180, * 3, Fn. 14 (May 1, 1998) (refusing to get medical treatment for child victim in order to conceal the crime is a separate animus for endangering children conviction); *State v. Cudgel*, 10th Dist. No. 99AP-532, *9 (Mar. 9, 2000) (same); *State v. Siller*, 8th Dist. No. 75139, *4 (Oct. 25, 2000) (beating victim to the point she would not be able to identify the defendant or assist in his apprehension is a separate animus for attempted murder conviction); *State v. White*, 135 Ohio App.3d 481, 490 (dragging a victim from an open place to a concealed place for cover during a rape constitutes a separate animus for kidnapping conviction). Therefore, since Brewer possessed the criminal tools in this case with an animus separate from the theft offense, the trial court did not err by failing to merge the possession of criminal tools conviction with Brewer's theft conviction.

### *Breaking & Entering and Possession of Criminal Tools*

{¶48} It is possible to commit the offenses of breaking and entering and possession of criminal tools with the same conduct and the same animus; for example, when a defendant uses a crowbar to break into a business to steal metal for scrap. *State v. VanValkenburg*, 5th Dist. No. 11-CA-91, 2012-Ohio-1213. However this case is distinguishable from *VanValkenburg* because Brewer's possession of criminal tools conviction is supported by a separate animus. Brewer

was not only indicted for possession of criminal tools because he used the "glass-breaking tool" to gain entrance into the convenience store, but also because he used the mask and gloves to conceal his identity and to prevent his subsequent apprehension. (Doc. No. 1). In fact, the State did not even mention Brewer's use of the "glass-breaking tool" during closing argument, but instead, focused upon Brewer's use of the mask and gloves for the aforementioned purposes. (Nov. 9-10, 2011 Tr. at 366, 370, 374). Brewer's motive or purpose (animus) of concealing his identity and preventing his subsequent apprehension was separate and distinct from his motive or purpose (animus) of breaking and entering. Therefore, the trial court did not err by failing to merge Brewer's criminal tools conviction with his breaking and entering conviction.

{¶49} Brewer's fourth assignment of error is, therefore, overruled.

{¶50} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**