[Cite as *State v. Eckard*, 2023-Ohio-4090.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 9-23-32

v.

BRYSON A. ECKARD,

    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 22-CR-485

Judgment Affirmed

Date of Decision: November 13, 2023

APPEARANCES:

    *W. Joseph Edwards* for Appellant

    *Raymond A. Grogan, Jr.* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Bryson Eckard ("Eckard"), brings this appeal from the April 6, 2023, judgment of the Marion County Common Pleas Court sentencing him to prison after a jury convicted him of Robbery. On appeal, Eckard argues that his conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On September 14, 2022, Eckard was indicted for Robbery in violation of R.C. 2911.02(A)(2), a second degree felony. Eckard pled not guilty to the charge and proceeded to a jury trial, which was held January 31, 2023. After hearing the evidence, the jury convicted Eckard of Robbery as charged.

{¶3} On April 6, 2023, Eckard was sentenced to serve an indefinite prison term of 8 to 12 years on the Robbery charge. Because Eckard was on postrelease control at the time he was convicted in this case, the trial court imposed an additional, consecutive 12-month prison term. Eckard brings the instant appeal from the trial court's judgment, asserting the following assignment of error for our review.

**Assignment of Error**

**The trial court erred in entering a finding of guilty because the verdict was against the manifest weight of the evidence.**

{¶4} In his assignment of error, Eckard argues that his Robbery conviction was against the manifest weight of the evidence.

### Standard of Review

{¶5} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

{¶6} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### Controlling Statute

{¶7} Eckard was convicted of Robbery in violation of R.C. 2911.02(A)(2), which reads as follows:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

* * *

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]

Evidence Presented

{¶8} On September 1, 2022, after it had gotten dark, D.J. was sitting on a chair in his front yard on Chestnut Street in Marion drinking alcoholic beverages when he was approached by Eckard. D.J. testified that he did not know Eckard and that Eckard demanded money. D.J. testified that Eckard also called him by his brother's name.

{¶9} When D.J. informed Eckard that he did not have any money, Eckard demanded that D.J. give up his jewelry instead. Eckard took two silver necklaces and two silver bracelets from D.J., punched D.J. in the face, then ran off "through somebody's yard." (Tr. at 152). A photograph showing swelling on the side of D.J.'s face was introduced into evidence.

{¶10} A man named R.B. lived across the street and he came outside when he heard yelling and screaming. When R.B. went outside, he saw Eckard in the road "messing with a backpack," trying to shove stuff into it. (Tr. at 173-174). R.B. testified that Eckard was mumbling something about "defend[ing]" the area and that Eckard said something about having to go and "brought up something about the

police." (Tr. at 174). Eckard started to walk away but then police officers came from both ends of the road.

{¶11} Officers from the Marion Police Department responded to the Chestnut Street area to a call for service regarding a "strong arm robbery." A description of the assailant was given as a man in maroon pants and a black bandana. As the officers approached the area, they located Eckard, wearing the described clothing.

{¶12} An officer activated his overhead lights and made contact with Eckard, explaining that Eckard matched a description of a person who had just committed a robbery in the area. Eckard responded that the police had no evidence to stop him. The officer told Eckard he was going to be "investigatively detained," and Eckard took off running, dropping his backpack as he ran. Eckard was soon caught on foot by the police. He had D.J.'s bracelet in his pocket and D.J.'s necklaces in his backpack.

{¶13} Eckard testified in his own defense at trial. He claimed that he came across D.J. while walking home from a girl's house. Eckard testified that D.J. was looking at him, that D.J. was "ducking behind cars," and that D.J. was "Spiderman crawling" on the lawn. (Tr. at 212). Eckard testified that he thought the behavior was odd and he asked D.J. what he was doing. Eckard testified that D.J. was very drunk, stumbling and muttering, and that D.J. responded that they were in front of his house. Eckard demanded that D.J. prove that he lived there.

{¶14} Eckard testified that D.J. gave him his necklaces and his bracelets as some sort of collateral while D.J. went and got his aunt to prove he lived in the home. "We made a deal that when he went inside to give me the jewelry, so he knew that he was gonna come back outside with his aunt." (Tr. at 220). D.J.'s aunt came outside and told Eckard that D.J. did in fact stay at the residence.

{¶15} Eckard claimed that he told D.J.'s aunt that he was going to hold onto D.J.'s jewelry until D.J. was sober and could explain his actions. Eckard testified he gave D.J.'s aunt his name so that D.J. could contact him on Facebook, and he then left.

{¶16} Eckard claimed that he only ran from police because he had a substantial amount of meth on him. He testified that he did not know how the police did not find the meth, that perhaps it fell out of his pocket as he ran or left it at the girl's house. Eckard acknowledged that he had multiple prior convictions and that he had only been released from incarceration approximately 10 days before this incident.

Analysis

{¶17} After reviewing the record, we find that the evidence presented clearly established the elements of a robbery. D.J. testified that Eckard struck him in the face, causing physical harm, during or after Eckard stole D.J.'s jewelry.

{¶18} Eckard claims on appeal that D.J.'s testimony regarding the incident was not credible because D.J. testified that he had consumed a substantial amount

of alcohol,[1] but Eckard was found with D.J.'s jewelry in his possession. D.J. also had swelling to his face where he said he had been struck, and Eckard ran from the police when he was questioned about the robbery.

**{¶19}** The jury did not find Eckard's testimony credible and we will not second-guess a jury's credibility determinations, particularly where they are overwhelmingly supported by the record. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). This is simply not a case where the evidence weighs heavily against the conviction. *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9. Therefore, we do not find that the jury clearly lost its way or created a manifest miscarriage of justice. Accordingly, Eckard's assignment of error is overruled.

*Conclusion*

**{¶20}** Having found no error prejudicial to Eckard in the particulars assigned and argued, his assignment of error is overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/hls**

---

[1] D.J. admitted in his testimony to consuming as many as nine 24-ounce cans of beer that day. Nevertheless, he testified he remembered the incident clearly and identified Eckard at trial.