[Cite as *State v. Henson*, 2014-Ohio-753.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  5-13-24

      v.

CESJAR J. HENSON,                   O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2013 CR 12

Judgment Affirmed

Date of Decision:   March 3, 2014

APPEARANCES:

    *Scott B. Johnson* **for Appellant**

    *Elizabeth H. Smith*  **for Appellee**

**PRESTON, J.**

{**¶1**} Defendant-appellant, Cesjar J. Henson ("Henson"), appeals the Hancock County Court of Common Pleas' judgment entry of sentence. For the reasons that follow, we affirm.

{**¶2**} This case stems from a March 2, 2012 traffic stop, during which an Ohio State Highway Patrol trooper found cocaine on Henson's person.

{**¶3**} On January 22, 2013, the Hancock County Grand Jury indicted Henson on one count of possession of cocaine in violation of R.C. 2925.11(A), a fifth-degree felony. (Doc. No. 1).

{**¶4**} The trial court held an arraignment hearing on January 30, 2013. Henson appeared with counsel and entered a plea of not guilty. (Doc. No. 6).

{**¶5**} On Aug. 26 and 27, 2013, a jury trial was held on the indictment, and the jury found Henson guilty. (Aug. 26-27, 2013 Tr., Vol. Two, at 290); (Doc. No. 46).

{**¶6**} The trial court held a sentencing hearing on Aug. 29, 2013. (Aug. 29, 2013 Tr. at 3); (Doc. No. 47). Based on Henson's criminal history, the trial court concluded that a prison term was appropriate and sentenced him to 11 months in prison. (*Id.* at 12); (*Id.*). The trial court also ordered Henson's operator's license suspended for 9 months and that he pay the costs of the proceedings. (*Id.* at 12,

20); (*Id.*).  The trial court filed its judgment entry of sentence on September 10, 2013.  (Doc. No. 47).

{¶7} On September 17, 2013, Henson filed a notice of appeal.  (Doc. No. 51).  Henson raises one assignment of error for our review.

### Assignment of Error

**The defendant's conviction was not supported by the manifest weight of the evidence.**

{¶8} In his assignment of error, Henson argues that his cocaine-possession conviction was against the manifest weight of the evidence.  Specifically, he argues that the State failed to demonstrate beyond a reasonable doubt that he "knowingly" possessed cocaine.  Henson also suggests, "[t]he fact that [his] criminal history was revealed to the trier of fact cannot be ignored."  (Appellant's Brief at 8).

{¶9} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175

(1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶10} The criminal offense of possession of cocaine found in R.C. 2925.11(A) provides: "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." To convict a defendant of possession of cocaine, the State is "required to prove beyond a reasonable doubt that defendant knowingly possessed cocaine." *State v. Williams*, 190 Ohio App.3d 645, 2010-Ohio-5259, ¶ 11 (10th Dist.) (citations omitted). R.C. 2901.22(B) defines the culpability of "knowingly" as:

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

"When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime." *State v. Edwards*, 10th Dist. Franklin No. 12AP-993, 2013-Ohio-3597, ¶ 10 (citations omitted). *See also State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶11} At trial, the State offered testimony of Trooper Derthick, who discovered cocaine in the form of "crack rock" on Henson's person during a traffic stop in the early morning hours of March 2, 2012. (Aug. 26-27, 2013 Tr., Vol. One, at 162, 179); (State's Ex. 1). Trooper Derthick testified that he stopped a Ford Expedition operated by Henson after observing the Expedition make an illegal left turn from a straight-ahead lane rather than the turn lane. (Aug. 26-27, 2013 Tr., Vol. One, at 165-167).

{¶12} Henson told Trooper Derthick that he was a musician and had just got done shooting a music video at Studio 4, where he consumed one cocktail. (*Id.* at 169-170). Trooper Derthick determined that Henson was impaired and placed him under arrest after a portable breath test revealed Henson's blood alcohol content was 0.128 grams by weight of alcohol per 210 liters of breath, and after Trooper Derthick administered field sobriety tests. (*Id.* at 170-178).

{¶13} After placing Henson under arrest, Trooper Derthick frisked him. (*Id.* at 179). During the frisk, Trooper Derthick found "[a] white rock like

substance in [Henson's] back right pocket," which "looked like a crack rock."[1] (*Id.*). Trooper Derthick testified that he asked Henson about the substance, and Henson denied knowing what it was. (*Id.* at 180, 195). Trooper Derthick transported Henson to the Findlay, Ohio Patrol Post, where Henson's blood alcohol content was 0.116 grams by weight of alcohol per 210 liters of breath according to the BAC Data Master machine. (*Id.* at 180-181).

{¶14} Trooper Derthick identified State's Exhibit 1 as a DVD video of his traffic stop of Henson. (*Id.* at 189-190). The State played the DVD for the jury, with Trooper Derthick offering explanations of what was happening at certain points during the stop. (*Id.* at 190-197).

{¶15} On cross-examination, Trooper Derthick testified that "[i]t's always been a rumor that they run drugs out of [Studio 4] quite often" and that Studio 4 has a reputation for being a hotbed for drug activity. (*Id.* at 199). He testified that he had never dealt with any drug cases involving Studio 4. (*Id.* at 199-200).

{¶16} Trooper Derthick testified that, after discovering the cocaine on Henson's person, he did not indicate to Henson that he believed it was cocaine because he wanted Henson to tell him what it was. (*Id.* at 201-202). Henson

---

[1] The State also offered the testimony of the criminalist from the Ohio State Highway Patrol Crime Laboratory who analyzed the substance Trooper Derthick found on Henson's person and concluded that it was "cocaine base." (Aug. 26-27, 2013 Tr., Vol. One, at 128, 156-157). Henson does not dispute that the substance was cocaine or that he possessed it, so we will not address the evidence concerning those elements of the offense.

never tried to explain to Trooper Derthick what the substance was, nor did he admit that it was cocaine. (*Id.* at 202). Once he had transported Henson back to the post, Trooper Derthick asked Henson if the substance he found in Henson's pocket was crack or crystal meth, and Henson again denied knowing what it was. (*Id.*).

{¶17} Trooper Derthick did not remember finding any business cards on Henson's person. (*Id.* at 202-203). He testified that the cocaine he found in Henson's pocket was loose in his pocket, with no container or packaging. (*Id.* at 204). Trooper Derthick testified that "[p]eople carry drugs in any which way," and he would not call it unusual for someone to have a crack rock loose in that person's pocket. (*Id.*). He testified that of the fewer than a dozen arrests he has made for crack cocaine, the drug was in packages most of the time. (*Id.* at 205). He recalled an arrest by another trooper who saw "loose crack rocks" come out of that suspect's pocket while he was resisting arrest. (*Id.* at 208).

{¶18} On re-direct examination, Trooper Derthick testified that he performed a pat down on Henson before placing him in his cruiser, at which point he did not find the cocaine. (*Id.* at 209-210). However, after arresting Henson, he performed a more thorough search of Henson, including his pockets, and found the cocaine. (*Id.* at 209-210).

{¶19} After Trooper Derthick concluded his testimony, the trial court admitted the State's exhibits into evidence. (*Id.* at 214). The State rested, and Henson moved for acquittal pursuant to Crim.R. 29. (*Id.* at 214-217). The trial court denied Henson's motion for acquittal and recessed for the evening. (*Id.* at 217, 219).

{¶20} The next morning, Henson took the stand. (Aug. 26-27, 2013 Tr., Vol. Two, at 224). He testified that he had a criminal history of possession and trafficking in drugs, with the most recent conviction coming in 2009, but that he had moved on since then. (*Id.* at 225). Henson testified that he is in the music industry and works for Cin Digital Media in Findlay "through the web." (*Id.* at 225).

{¶21} Henson testified that on the night of March 2, 2012, he got a call from his promotion executive who told him he had the budget to shoot a music video at Studio 4 in Findlay. (*Id.*). Henson traveled to Studio 4 and when he arrived, he had to be escorted in by the bouncers because of the "major crowd" that night. (*Id.* at 225-226). Henson "brought about four outfits" and had "about at least thirteen changes" for the video. (*Id.* at 226). Henson testified that the outfits he was not wearing during the video were sitting in a public area, "right on the edge of the stage right next to the men's restroom. So it would make it easy

for [him] to grab and change and then go into the bathroom then come out." (*Id.* at 227).

{¶22} After Henson left Studio 4, he went across the street to a gas station to get gas and some cigarettes. (*Id.*). When Henson got back into his vehicle and pulled into the roadway, a car pulled up next to his and invited him to an after party. (*Id.* at 227-228). Henson then made the left turn for which Trooper Derthick pulled him over. (*Id.* at 228).

{¶23} Henson testified that the video of his traffic stop, State's Exhibit 1, was accurate. (*Id.*). He said "[r]eally nothing was going through [his] mind at the time" he was pulled over, except that he was wondering why he was being stopped. (*Id.*). Henson testified that when Trooper Derthick asked him what was in his pockets while he was searching him, he told him he "had a lighter, a pack of cigarettes, and some business cards [he] had got from the club." (*Id.* at 229). He testified that he told Trooper Derthick he did not know what was in his rear pocket, other than the business cards. (*Id.*).

{¶24} On cross-examination, the State asked Henson about his convictions and sentences for possession of cocaine in 2003 and for trafficking in cocaine in 2007 and 2009. (*Id.* at 230-233); (State's Exs. 7-9). Henson testified that only he wore the clothes that he brought for himself to Studio 4 and that no one shared clothing with him. (Aug. 26-27, 2013 Tr., Vol. Two, at 234). When the attorney

for the State asked Henson whether he saw anyone actually touch his pants the evening he was at Studio 4, he said he could not say because he was on the other side of the building. (*Id.* at 238). He was "just in and out of" Studio 4 for about an hour and 15 or 20 minutes the night he shot the music video. (*Id.* at 235, 237). Henson said he consumed a "large cocktail" consisting of Cognac, Grand Marnier, grenadine, and soda while at Studio 4, but he did not consume alcohol before he arrived at or after he left Studio 4. (*Id.* at 235-236). He admitted that there was more than just one shot of alcohol in his cocktail. (*Id.* at 236). Henson testified that he received the business cards as "soon as [he] walked in the door," and he put them in the pocket in which Trooper Derthick later found the cocaine. (*Id.* at 238).

{¶25} On re-direct examination, Henson testified that he was seen a number of times in the music video with an unopened bottle of champagne in his hand. (*Id.* at 239). He said that he was at least 30 feet away from his changes of clothes while he was shooting the video and could not see them because the "[p]lace was too crowded." (*Id.*).

{¶26} On re-cross examination, Henson said he was "not even sure" why someone would put a rock of crack cocaine in his back pocket. (*Id.* at 240).

{¶27} After Henson's testimony, the defense rested. (*Id.*). The State offered no rebuttal testimony. (*Id.*). The trial court admitted into evidence the

additional exhibits introduced by the State during its cross-examination of Henson. (*Id.*). Counsel gave their closing arguments, and the trial court charged the jury. (*Id.* at 244-288). The jury found Henson guilty of possession of cocaine. (*Id.* at 290).

{¶28} After examining the record in this case, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The "knowingly" element of the offense is the only one at issue. "The statutory definition of 'knowingly' does not require that appellant know that cocaine was in his pocket to an absolute certainty. Instead, the State of Ohio had only to show that appellant was aware that he probably had cocaine in his pocket." *State v. Williams*, 10th Dist. Franklin No. 09AP-1152, 2010-Ohio-3383, ¶ 6.

{¶29} There was no direct evidence presented that Henson knew the substance in his back right pocket was cocaine, but "when the disputed issue is the defendant's culpable mental state, direct evidence will usually not be available and, as such, proof must be derived from circumstantial evidence." *State v. Rodgers*, 3d Dist. Hancock No. 5-10-35, 2011-Ohio-3003, ¶ 27, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). *See also State v. Pierce*, 3d Dist. Paulding No. 11-09-05,

2010-Ohio-478, ¶ 15 ("The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'"), quoting *Teamer*, 82 Ohio St.3d at 492; *Edwards*, 2013-Ohio-3597, at ¶ 10. "Circumstantial evidence has the same probative value as direct evidence." *Rodgers* at ¶ 27, citing *Jenks* at paragraph one of the syllabus.

**{¶30}** The State presented evidence—and Henson does not dispute—that Henson had cocaine in his pocket. This alone is circumstantial evidence that Henson knew he probably had cocaine in his pocket. *See Williams* at ¶ 14. *See also State v. Paidousis*, 10th Dist. Franklin No. 00AP-1118, 2001 WL 436079, *3 (May 1, 2001) ("We agree with the state's argument that it was a permissible inference that the heroin, having been found in a jacket worn by defendant, was there with defendant's knowledge."), citing *State v. Walker*, 10th Dist. Franklin No. 90AP-34, 1990 WL 126294 (Aug. 30, 1990).

**{¶31}** Additional circumstantial evidence was Henson's decision to go to a busy nightclub with a reputation for being a hotbed for drug activity to shoot a music video. His decision to drink a "large cocktail" at Studio 4 may have reasonably suggested to the jury that Henson was not at the nightclub strictly on business. In addition, Henson told Trooper Derthick on the night of his arrest that he was in the club for less than an hour, but he inconsistently testified that he was

at Studio 4 for about an hour and 15 or 20 minutes. (State's Ex. 1); (Aug. 26-27, 2013 Tr., Vol. Two, at 235).

{¶32} Henson suggests that someone at Studio 4 may have planted the cocaine in his pocket while he was in a different change of clothes. However, beyond Henson speculating that someone put the cocaine in his pocket, there was no evidence that anyone else at the nightclub touched or wore his pants. To the contrary, Henson testified that no one shared clothing with him that night and that he was the only person who wore the clothes he took to Studio 4. (Aug. 26-27, 2013 Tr., Vol. Two, at 234). Nor is there any evidence supporting Henson's theory that the cocaine was handed to him without his knowledge along with the business cards.

{¶33} Henson testified that he left Studio 4 and went to the gas station across the street. (*Id.* at 227). When Trooper Derthick pulled Henson over, Henson was with two passengers, but no evidence was presented that those passengers had access to Henson's clothing. In other words, no evidence was presented that anyone at Studio 4 or that the passengers in his vehicle wore, used, manipulated, or otherwise had dominion over his clothing. When asked why someone would put cocaine in his pocket, Henson said he was "not even sure." (*Id.* at 240).

{¶34} Henson's theory concerning how the cocaine came into his possession—and, more importantly, the scant evidence supporting his theory—is not compelling. *See Paidousis* at *3 ("Further, despite defendant's general assertion that family members, roommates and friends often share articles of clothing, there was no evidence that defendant was with anyone at the time he was found unconscious, or that any other individuals had dominion or control over the jacket.").

{¶35} Finally, Henson decided to testify in his defense, and the State in its cross-examination impeached him with evidence of three prior felony convictions. (Aug. 26-27, 2013 Tr., Vol. Two, at 230-233); (State's Exs. 7-9). Although he does not say so explicitly, Henson appears to suggest that the jury used for improper purposes the evidence of his being stopped for drunk driving and his criminal history. However, the trial court instructed the jury that the charge against Henson was possession of cocaine and that the jury was not to consider evidence of his prior drug offenses to prove his character "in order to show that he acted in accordance with that character." (Aug. 26-27, 2013 Tr., Vol. Two, at 267-268). "Absent evidence to the contrary, the jury is presumed to follow the trial court's instruction." *State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381, ¶ 64, citing *State v. Standifer*, 12th Dist. Warren No. CA2011-

07-071, 2012-Ohio-3132, ¶ 38.  Henson does not direct us to "evidence to the contrary," and we have found none in our review of the record.

**{¶36}** Weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we conclude that the jury, in resolving conflicts in the evidence, did not clearly lose its way concerning the "knowingly" element of the offense so as to create such a manifest miscarriage of justice that Henson's conviction must be reversed and a new trial ordered.

**{¶37}** Henson's assignment of error is overruled.

**{¶38}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ROGERS and SHAW, J.J., concur.**

**/jlr**