[Cite as *State v. Sepulveda*, 2023-Ohio-3429.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  2-23-06

      v.

VERONICA SEPULVEDA,            O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No.  2022 CRB 00371

Judgment Affirmed

Date of Decision:  September 25, 2023

APPEARANCES:

    *Nick A. Catania* for Appellant

    *Reed D. Searcy* for Appellee

**WALDICK, J**.

**{¶1}** Defendant-appellant, Veronica Sepulveda ("Sepulveda"), brings this appeal from the April 18, 2023, judgment of the Auglaize County Municipal Court sentencing her to 90 days in jail, with 60 days suspended, after Sepulveda was convicted by a jury of Resisting Arrest in violation of R.C. 2921.33(A).

*Background*

**{¶2}** On June 21, 2022, Sepulveda was charged with Obstructing Official Business in violation of R.C. 2921.31(A), and Resisting Arrest in violation of R.C. 2921.33(A). Sepulveda pled not guilty to the charges and proceeded to a jury trial. The jury convicted Sepulveda of Resisting Arrest as charged, but acquitted her of Obstructing Official Business.

**{¶3}** On April 18, 2023, Sepulveda was placed on community control for two years, and she was sentenced to 90 days in jail, with 60 days suspended. A judgment entry memorializing Sepulveda's sentence was filed that same day. It is from this judgment that Sepulveda appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The Trial Court's decision finding the appellant guilty was against the manifest weight of the evidence.**

**Second Assignment of Error**

**The trial court erred in not granting the defendant's motion for acquittal, pursuant to Criminal Rule 29, in that the evidence of the State of Ohio was insufficient for the matter to have been submitted to the jury.**

**Third Assignment or Error**

**The trial court erred in allowing the admission of the medical photos of Lt. Place's injured finger.**

{¶4} Due to the nature of the discussion, we elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶5} In her second assignment of error, Sepulveda argues that the trial court erred by denying her Crim.R. 29 motion for acquittal on the Resisting Arrest charge.

Standard of Review

{¶6} A Crim.R. 29 motion for acquittal tests the sufficiency of the evidence. *State v. North*, 3d Dist. Seneca No. 13-15-16, 2015-Ohio-4526, ¶ 5. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of

the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

## Controlling Statute

**{¶7}** Sepulveda was convicted of Resisting Arrest in violation of R.C. 2921.33(A), which reads, "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

## Evidence Presented by the State

**{¶8}** On June 19, 2022, Sepulveda fell and injured her head. As a result of the injury, 911 was called and emergency services ("EMS") responded from the fire department. In addition, Lieutenant Shannon Place of the Wapakoneta police department responded to the scene, indicating that law enforcement generally responded to EMS calls to provide assistance.

**{¶9}** Once at the scene, a paramedic with the fire department made contact with Sepulveda and determined that she had a laceration on the back of her head. Sepulveda informed the paramedic that she had been drinking alcohol, and the paramedic believed she was intoxicated based on his experience.[1]

---

[1] On the body cam footage introduced into evidence, Sepulveda can be heard stating that she had over six shots of whiskey.

{¶10} The paramedic testified that he and his partner attempted to bandage Sepulveda's head but she pulled the bandage off. When the paramedic attempted to reapply the bandage while Sepulveda was standing, Sepulveda fell on the ground.

{¶11} As the paramedic attempted to assist Sepulveda while she was on the ground, Sepulveda's boyfriend, Tyler Dunlap, interfered. Dunlap, who was also intoxicated based on Lt. Place's testimony, sat on the ground behind Sepulveda's head and was holding her, preventing EMS from treating her. EMS personnel, Sepulveda, and Lt. Place all repeatedly asked Dunlap to step away from Sepulveda so she could be treated. Dunlap, mostly silent, did not comply.

{¶12} At one point, Lt. Place was able to get Dunlap's attention and she asked him to move away from Sepulveda. In response, Dunlap glared at her "in a manner that made [her] feel like he was going to either strike [her] or attempt to fight." (Tr. at 109). Dunlap continued not to move despite all those at the scene attempting to get him to do so, including Sepulveda. Eventually Lt. Place advised Dunlap that she was going to detain him so he could be removed from the situation. At that point, Dunlap rapidly got up and told Lt. Place that she was not going to detain him.

{¶13} Lt. Place told Dunlap that he was going to be placed under arrest. Dunlap continued not to comply so Lt. Place unholstered her Taser. Lt. Place testified, "when I unholstered my Taser I had ahold of his hand and there's a slight

jostling of our hands. He was able to manipulate my hand, grab mine and I felt a pop in my left ring finger." (Tr. at 111). Dunlap had broken Lt. Place's ring finger on her left hand.

**{¶14}** As Lt. Place was attempting to get Dunlap to comply with her orders, Sepulveda got up off of the ground and she came between Dunlap and Lt. Place. Sepulveda physically batted the Taser away so that it was not pointing at Dunlap. The interaction was recorded on Lt. Place's body camera.

**{¶15}** As a result of the incident, Dunlap was arrested and charged with Assault, Resisting Arrest, and Misconduct at an Emergency. Sepulveda was charged with Obstructing Official Business and Resisting Arrest for her role in interfering with Dunlap's arrest. She was convicted of Resisting Arrest.

Analysis

**{¶16}** In arguing that there was insufficient evidence to convict Sepulveda of Resisting Arrest for her interference of Dunlap's arrest, Sepulveda indicates that we should sustain her assignment of error for the "same reasons stated" in the assignment of error related to manifest weight. (Appt.'s Br. at 6). She makes no separate argument under this assignment of error regarding sufficiency. Generally, this is improper. *See* App.R. 12(A)(2); App.R. 16(A)(7). Nevertheless, in the interest of justice, we will address her assignment of error pertaining to sufficiency.

**{¶17}** We emphasize that in a sufficiency analysis, we are directed to look at the evidence in the light most favorable to the State. *Jenks*, *supra*. Here, evidence was presented that Sepulveda got between Lt. Place and Dunlap while Lt. Place was attempting to arrest Dunlap. Sepulveda made contact with Lt. Place's Taser and pushed it away, changing its direction so that it was not pointed at Dunlap. A rational trier-of-fact could find Sepulveda's actions constituted reckless interference with the lawful arrest of Dunlap, or that Sepulveda used force in knocking away the Taser, interfering with the lawful arrest of Dunlap.

**{¶18}** In sum, after reviewing the record, we do not find that the State presented insufficient evidence to convict Sepulveda of Resisting Arrest. Therefore, her second assignment of error is overruled.

*First Assignment of Error*

**{¶19}** In her first assignment of error, Sepulveda argues that her conviction for Resisting Arrest was against the manifest weight of the evidence.

Standard of Review

**{¶20}** In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving

conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶21}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### Evidence Presented by the Defense

**{¶22}** Sepulveda testified in this matter that even on the body camera footage it was evident that she was telling Dunlap to comply with the orders of Lt. Place. She testified that she was not trying to impede the arrest and that she just wanted treatment from EMS. Further, she testified that she did not see Lt. Place's Taser, and that she did not "jump in the middle" of an arrest. (Tr. at 165).

### Analysis

**{¶23}** This case largely concerns credibility of the witnesses, which is the province of the jury. *DeHass* at 231. Further, Lt. Place's version of events was supported by her body camera footage, which clearly showed Sepulveda interfering

with the arrest of Dunlap. Thus the video evidence supported Lt. Place's testimony and contradicted at least some of Sepulveda's.

{¶24} Moreover, while Sepulveda may have encouraged Dunlap to comply with Lt. Place's orders when Dunlap refused to move away from Sepulveda on the ground, this did not stop Sepulveda from getting between Dunlap and Lt. Place when the arrest was taking place shortly thereafter. Sepulveda's action in getting between Lt. Place and Dunlap, combined with her action moving Lt. Place's Taser, led to her charges in this case.

{¶25} After reviewing the evidence, we do not find that Sepulveda's conviction for Resisting Arrest is against the manifest weight of the evidence. This is not a situation where the evidence weighs strongly against Sepulveda's conviction. Therefore, her first assignment of error is overruled.

*Third Assignment of Error*

{¶26} In her third assignment of error, Sepulveda argues that the trial court erred by admitting two pictures of Lt. Place's broken finger into evidence.

Standard of Review

{¶27} A trial court has broad discretion with respect to the admission of evidence. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 37. Thus we will not disturb a trial court's evidentiary rulings absent an abuse of discretion that produces material prejudice to the aggrieved party. *State v. Gipson*, 3d Dist. Allen

No. 1-15-51, 2016-Ohio-994, ¶ 48. An abuse of discretion is more than an error of judgment; it means that the trial court's determination was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

Analysis

**{¶28}** Sepulveda argues that the trial court erred by admitting two pictures of Lt. Place's broken finger into evidence. The first photograph is a close-up of the back of Lt. Place's left hand. The left ring finger has a pin in it and a bruise is visible further down the hand. The second photograph is a close-up of the front of Lt. Place's left hand, showing the finger from a different angle.

**{¶29}** Sepulveda objected to the introduction of the photographs at trial, contending that because the injury to Lt. Place's finger was caused by Dunlap, the photographs were irrelevant to Sepulveda's activity. The State countered by arguing that the photographs helped establish the character of the arrest that Sepulveda interfered with, noting that Sepulveda interfered very shortly after Dunlap broke Lt. Place's finger. The trial court overruled Sepulveda's objection but indicated the trial court would limit the testimony if it went any further.

**{¶30}** In reviewing the matter, we find no abuse of discretion with the trial court's determination that the photographs contained some limited relevance here given that Lt. Place's finger was broken during the arrest that Sepulveda interfered with. Moreover, even if the trial court did err in admitting these photographs, we

fail to see how they created any material prejudice given that the photographs are not gruesome and are illustrative of Lt. Place's injury. For all of these reasons, Sepulveda's third assignment of error is overruled.

*Conclusion*

**{¶31}** Having found no error prejudicial to Sepulveda in the particulars assigned and argued, her assignments of error are overruled and the judgment of the Auglaize County Municipal Court is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**