[Cite as *State v. Seibert*, 2024-Ohio-5257.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### VAN WERT COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

  v.

ROBERT KAURY SEIBERT,

      DEFENDANT-APPELLANT.

CASE NO. 15-24-03

O P I N I O N

Appeal from Van Wert County Common Pleas Court
Trial Court No. 23-CR-04-047

**Judgment Affirmed**

**Date of Decision: November 4, 2024**

APPEARANCES:

    *Ian A. Weber* for Appellant

    *Eva Jane Yarger* and *Morgan A. Jackson* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, Robert K. Seibert ("Seibert"), brings this appeal from the February 7, 2024 judgment of the Van Wert County Common Pleas Court sentencing him to 36 months in prison after a jury found him guilty of Failure to Comply with an Order or Signal of a Police Officer ("Failure to Comply"). On appeal, Seibert argues that his conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On April 6, 2023, Seibert was indicted for Failure to Comply in violation of R.C. 2921.331(B), 2921.331(C)(5)(a)(ii), a third degree felony, and Tampering with Evidence in violation of R.C. 2921.12(A)(1), a third degree felony. Seibert pled not guilty to the charges.

{¶3} Seibert proceeded to a jury trial wherein he was convicted of Failure to Comply, but acquitted of Tampering with Evidence. On February 7, 2024, Seibert was sentenced to serve 36 months in prison on the Failure to Comply charge.[1] It is from this judgment that Seibert appeals, asserting the following assignments of error for our review.

---

[1] Seibert was ordered to serve the prison term consecutive to a prison term imposed in another county.

**First Assignment of Error**

**The Appellant's conviction for failure to comply with order or signal of police officer in violation of R.C. 2921.331(B), 2921.331(C)(5)(a)(ii) is against the manifest weight of the evidence as the State of Ohio failed to prove beyond a reasonable doubt that Appellant's operation of a motor vehicle caused a substantial risk of serious physical harm to persons or property.**

**Second Assignment of Error**

**The Appellant's conviction for failure to comply with order or signal of police officer (3rd Degree felony) in violation of R.C. 2921.331(B), 2921.331(C)(5)(a)(ii) is against the manifest weight of the evidence as the State of Ohio failed to prove beyond a reasonable doubt that Appellant's failure to comply with order or signal of police officer while operating the vehicle was willful.**

{¶4} As both assignments of error concern the weight of the evidence, we will address them together.

*First and Second Assignments of Error*

{¶5} In his first assignment of error, Seibert argues that the evidence did not establish that his operation of a motor vehicle while fleeing from police created a substantial risk of serious physical harm to persons or property. In his second assignment of error, Seibert argues that the State failed to establish that his conduct was "willful."

Standard of Review

{¶6} When reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the

conflicting testimony. *State v. Thompkins*, 1997-Ohio-52. In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, when assessing a manifest-weight challenge, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

### Controlling Authority

**{¶7}** Seibert was convicted of "Failure to Comply" in violation of R.C. 2921.331(B)/(C)(5)(a)(ii), which reads as follows:

> (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
>
> * * *
>
> (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.

\* \* \*

(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

\* \* \*

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶8} Revised Code 2901.01(A) defines "serious physical harm to persons" and "serious physical harm to property" as follows:

(5) "Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

\* \* \*

(6) "Serious physical harm to property" means any physical harm to property that does either of the following:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

\* \* \*

(8) "Substantial risk" means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist.

### Evidence Presented

{¶9} Around 4:30 p.m. on July 12, 2022, Seibert drove a silver Acura to Tyler Short Stop, a carryout in Van Wert. Employees at a muffler shop across the street noticed the Acura when it arrived at the Short Stop because the vehicle had a loud, modified exhaust. Seibert had his friend with him, James Vibbert, and they both went inside Short Stop. They were recorded on surveillance cameras in the store.

{¶10} After purchasing some items, Seibert and Vibbert left the store. An employee from the muffler shop across the street testified that while he saw two men get out of the silver Acura and go into Short Stop, he did not see them get into the car to leave; however, he did *hear* the Acura leaving, describing it as accelerating "heavily." (Tr. at 210).

**{¶11}** Sergeant Cory Hirschy of the Van Wert City Police Department was on patrol in a marked cruiser at approximately 4:40 p.m. when he noticed a silver vehicle leaving Tyler Short Stop. He testified that there were two occupants in the vehicle and that he noticed that the vehicle had an expired registration sticker.

**{¶12}** Sergeant Hirschy testified that he followed the vehicle and tried to catch up to it to get the license plate number and confirm that the registration was expired. However, as he tried to get close to the vehicle at an upcoming stop sign, he observed the vehicle "bl[o]w through the stop sign" and take off. (Tr. at 308). Sergeant Hirschy testified that he then activated his lights and sirens and followed the vehicle but the vehicle did not stop.

**{¶13}** Sergeant Hirschy testified that the silver vehicle accelerated and he followed. Sergeant Hirschy testified that the vehicle began to drive at high rates of speed. Sergeant Hirschy followed the vehicle from North Race Street to East Sycamore Street, to North Wayne Street, to Lincoln Highway, but he was not able to catch the vehicle.

**{¶14}** Sergeant Hirschy's speed was recorded while he followed the silver vehicle. Sergeant Hirschy traveled as fast as 71 mph in a 25 mph zone, 75 mph in a 35 mph zone, and 84 mph in a 55 mph zone while following and trying to catch the silver vehicle.

**{¶15}** Sergeant Hirschy testified that he witnessed the silver vehicle nearly cause two accidents. At the intersection of North Wayne Street and Lincoln

Highway, Sergeant Hirschy testified that he observed the silver vehicle turn left onto Lincoln Highway, weaving between multiple cars in the area, specifically cutting off a driver who was in the process of turning right onto Lincoln Highway from the opposite direction. Sergeant Hirschy testified that if the driver of the vehicle that the silver Acura cut off had not stopped, there would have been a collision. (Tr. at 314). Sergeant Hirschy testified that he eventually deactivated his lights and sirens because he did not want to "push" the situation further to cause the driver "to make even more inappropriate decisions." (*Id*.)

{¶16} Sergeant Hirschy testified that he tried to keep the silver Acura within eyesight as he followed it toward US Route 30. Sergeant Hirschy testified that he observed the silver Acura pass a vehicle on Lincoln Highway while a red car was coming in the opposite direction. Sergeant Hirschy testified he thought there was going to be a collision. Sergeant Hirschy testified that he lost sight of the silver vehicle near US Route 30 and he terminated his pursuit. He testified that the pursuit lasted approximately four minutes.

{¶17} After terminating his pursuit, Sergeant Hirschy went back to the Short Stop and reviewed the footage of the individuals who were in the vehicle. He did not know Seibert at the time, but when he circulated a picture from the Short Stop, another officer recognized Seibert. Sergeant Hirschy also learned that Seibert lived with his grandmother in the area, so over the next several days he periodically checked the residence for Seibert.

**{¶18}** On July 18, 2022, the employee from the muffler shop across from the Short Stop saw the Acura again, though it had been painted a "baby blue" or "sky blue." Despite the color change, the employee was certain the vehicle was the same because he saw that the interior "door jams" were still silver. (Tr. at 215). The employee called the police but by the time the police arrived the vehicle was gone.

**{¶19}** On July 19, 2022, Sergeant Hirschy went to Seibert's grandmother's residence and Seibert was in the garage. The now light-blue Acura was in the driveway and the area smelled like paint. Sergeant Hirschy testified that Seibert was wearing the same shorts that he was in the surveillance video from July 12, 2022, and that Seibert appeared nervous.

**{¶20}** Sergeant Hirschy testified that Seibert indicated the Acura was his, but Seibert was unwilling to open the car door so Sergeant Hirschy could look at the door jams. Sergeant Hirschy testified that there were multiple other license plates in the vehicle, including one with the expired tag. The vehicle was not registered to Seibert. Seibert denied fleeing from the police.

**{¶21}** Seibert's friend, James Vibbert, testified at trial that he was the individual with Seibert at the Short Stop on the date in question. He initially testified that he did not remember riding with Seibert while Seibert was being chased by the police. However, on cross-examination, Vibbert was asked if Seibert was running from police on the date in question and Vibbert testified, "I, I think so, maybe." (Tr.

at 344). Vibbert's testimony was somewhat obstreperous, but he contended that he was high at the time of the incident and he did not remember much.

**{¶22}** Seibert testified on his own behalf at trial. He testified that on the date in question he was driving the silver Acura, which was owned by a friend. He testified that he went to Short Stop and purchased some items, then left. He testified that he noticed the police officer behind him, and that he saw the police officer's lights go on at one point, but Seibert testified the lights were turned off quickly and there were no sirens.

**{¶23}** Seibert testified that he did not do anything abnormal while driving. He testified that he passed some cars but he stated that they were going under the speed limit. Further, Seibert testified that he did not nearly cause any accidents while driving. He maintained that Sergeant Hirschy was lying and exaggerating, claiming that the police department was specifically looking to get him.[2] As to the car's color change, Seibert testified that the owner of the vehicle was the one who decided to paint it a different color, not him.

**{¶24}** Notably, Seibert was combative during cross-examination, and at one point he attempted to stop answering questions. He acknowledged having prior

---

[2] Sergeant Hirschy testified that his office had received a "Read and Sign" essentially telling them to be on the lookout for Seibert in the days before July 12, 2022. Sergeant Hirschy testified that although the "Read and Sign" indicated that Seibert would be driving a sporty, two-door car with a black hood and a black front bumper, he was drawn to the car because of the noise and the expired sticker. He testified he could not even see the black hood of the car initially.

felony convictions, but he said he pled guilty in previous cases because he was actually guilty.

**{¶25}** The State entered numerous exhibits into evidence, including maps illustrating the path that Sergeant Hirschy took to follow Seibert on the date in question. The State also presented surveillance video from Short Stop and numerous photographs.

Analysis

**{¶26}** Seibert first contends that his conviction for Failure to Comply is against the manifest weight of the evidence because the evidence did not establish beyond a reasonable doubt that his actions caused a substantial risk of serious physical harm to persons or property. We disagree.

**{¶27}** Sergeant Hirschy testified that during his pursuit of Seibert, there were almost two motor vehicle collisions. The first collision was at the intersection of North Wayne Street and Lincoln Highway, where Seibert's vehicle cut off another vehicle that was in the process of turning. Sergeant Hirschy specifically testified that if the other vehicle would not have stopped, he assumed there would have been a collision.

**{¶28}** The second near collision was when Seibert passed a vehicle while a red vehicle was coming in the opposite direction. Sergeant Hirschy testified that Seibert was driving fast and reckless, and that he was a danger to the public.

Moreover, Sergeant Hirschy terminated his pursuit of Seibert because he was concerned for the safety of the public and he did not want Seibert to make "even more inappropriate decisions." (Tr. at 314).

{¶29} It is a perfectly reasonable assessment of the evidence for a jury to conclude that Seibert's actions created a substantial risk of serious physical harm to persons, or serious physical harm to property. *State v. Hopkins,* 2010-Ohio-2441, ¶ 24 (5th Dist.) (holding that the fact that Appellant did not cause an actual collision with another vehicle is irrelevant. "Here, he was convicted under R.C. 2921.331(C)(5)(a)(ii), which deals with a 'substantial risk.' Because Appellant was fortunate enough not to actually cause harm is of no consequence."); *see also State v. Eldridge*, 2023-Ohio-3998, ¶ 51 (2d Dist.). We emphasize that the statute does not require that *actual* harm occur, rather it requires that there was a substantial risk of serious physical harm to persons or property. *State v. Scott*, 2012-Ohio-3811, ¶ 19 (8th Dist.)

{¶30} Seibert attempts to undermine the State's evidence by arguing that Sergeant Hirschy was not credible, but the jury disagreed. We will not second-guess a factfinder's credibility determinations. *See DeHaas*, *supra*.

{¶31} Moreover, " '[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *State v. Foster*, 2024-Ohio-2924, ¶ 37 (10th Dist.), quoting *Eastley*

*v. Volkman*, 2012-Ohio-2179, ¶ 21. After reviewing the record in its entirety, we find that Seibert's conviction for Failure to Comply is not against the weight of the evidence on the issue of whether he created a substantial risk of serious physical harm to persons or property. Therefore, his first assignment of error is overruled.

**{¶32}** In his second assignment of error, Seibert argues that his conviction was against the manifest weight of the evidence because the evidence did not support that he acted with "willful" intent.

**{¶33}** As we have stated previously, the term "willful" is not defined in R.C. 2901.22, which is the statutory section that defines culpable mental states for criminal liability. *State v. Cole*, 2011-Ohio-409, ¶ 22 (3d Dist.). However, the 1974 committee comments to R.C. 2901.22 state the following: "Purpose is defined in terms of a specific intention either to cause a certain result, or to engage in conduct of a certain nature regardless of what the offender intends to accomplish through that conduct. 'Purposely' in the new code equates with 'purposely,' 'intentionally,' 'willfully,' or 'deliberately' in the former law." Generally, the intent of a person cannot be proven by direct evidence, thus proof can be shown by circumstantial evidence. *Cole* at ¶ 23.

**{¶34}** Here, Seibert argues that the pursuit was limited in time and Seibert testified he did not see the officer's lights or hear the sirens. He argues that the evidence did not support that he was willfully eluding the police.

**{¶35}** However, the jury saw and heard Seibert testify, and could readily determine that his claims were not credible. This is particularly true given the testimony that Seibert ran a stop sign, weaved through multiple cars, and drove at high rates of speed while fleeing from Sergeant Hirschy. These factors constitute significant circumstantial evidence from which a jury could conclude that Seibert was fleeing "willfully." Based on the evidence in the record, we do not find that Seibert's conviction is against the manifest weight of the evidence. Therefore, Seibert's second assignment of error is overruled.

*Conclusion*

**{¶36}** Having found no error prejudicial to Seibert in the particulars assigned and argued, his assignments of error are overruled. The judgment of the Van Wert County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlm**